FILED

2014 DEC 23 PM 3:31

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

acc DEPUTY



SEALED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

September 2013 Grand Jury

| UNITED STATES OF AMERICA, | Case No. 14CR3703 JLS |
|---|---|
| Plaintiff, | **I N D I C T M E N T** |
| v. | Title 18, U.S.C., Sec. 286 – Conspiracy To Defraud the United States with Respect to Claims; Title 18, U.S.C., Sec. 1349 – Conspiracy To Commit Wire Fraud; Title 18, U.S.C., Sec. 287 – False Claims; Title 18, U.S.C., Sec. 2 – Aiding and Abetting; Title 18, U.S.C., Sec. 981(a)(1)(c), and Title 28, U.S.C., Sec. 2461(c) – Criminal Forfeiture |
| NEIL PETERSON (1), LINDA RAJA (2), ▮▮▮▮▮▮ ▮▮▮▮ | |
| Defendants. | |

The grand jury charges:

**INTRODUCTORY ALLEGATIONS**

A. GDMA and its Employees

1. Glenn Defense Marine (Asia) ("GDMA") was a corporation headquartered in Singapore, with operating locations in Japan, Thailand, Malaysia, Korea, Hong Kong, Indonesia, Australia, Philippines, and the United States. GDMA's main business involves the "husbanding" of marine vessels, a service it had provided across Asia under various contracts with the U.S. Navy for over 25 years. "Ship husbanding" involves the coordinating, scheduling, and direct and

MWP:RSH:nlv:San Diego
12/23/14

indirect procurement of items and services required by ships and submarines when those vessels arrive at port. Examples of these items and services include tugboats; fenders; port authority or customs fees; security; food; fuel; water; trash removal; collection, holding, and transfer of liquid waste ("CHT"); and transportation.

2. Leonard Glenn Francis was a citizen of Malaysia. Francis was the owner, President and CEO of GDMA.

3. Defendant NEIL PETERSON was a citizen of Singapore. PETERSON was the Vice President of Global Operations for GDMA.

4. Defendant LINDA RAJA was a citizen of Singapore. RAJA was GDMA's General Manager for Singapore, Australia, and Pacific Isles. Prior to being promoted into this position, RAJA was GDMA's Country Manager for Operations.

5. ███████████████████████████████████████████████████████████████████████████████████

B. GDMA's Contracts with the U.S. Navy

6. The U.S. Naval Supply Systems Command ("NAVSUP") is a command within the U.S. Navy responsible for the global supply and delivery of goods and services to U.S. Navy personnel and warfighting assets. The U.S. Navy Fleet Logistics Centers ("FLCs") are subordinate commands of NAVSUP. The FLCs are located in various domestic and foreign locations and provide logistics support for naval installations and vessels operating in their areas of responsibility. NAVSUP FLC commands are responsible for soliciting, awarding, and overseeing contracts for goods and services, including for ship husbanding. NAVSUP FLC in Yokosuka, Japan ("FLC Yokosuka") directly supports naval installations and vessels operating in Japan, Hong

2

Kong, and Russia. FLC Yokosuka also oversees the operations of an FLC detachment in Singapore ("FLC Singapore"), which directly supports naval installations and vessels in Singapore, Indonesia, the Philippines, Thailand, Cambodia, Vietnam, Australia, and elsewhere.

7. In or about Summer 2011, NAVSUP awarded GDMA three contracts to provide husbanding services to U.S. Navy ships and submarines at ports throughout Southeast Asia (Region 2), Australia and Pacific Isles (Region 3), and East Asia (Region 4).

8. The Region 2 contract was structured with a first-year base value of $25 million, with options to extend the contract for up to four additional years, for a total base value of over $125 million. The Region 2 contract provided for pricing of different ship husbanding services as follows:

    a. *Fixed Price Items.* For each port, GDMA and the U.S. Navy agreed to fixed prices for various specified services.

    b. *Incidentals.* The contract also provided for "Incidentals," or items that fall within the general scope of ship husbanding services but were not enumerated as fixed price items. For these items, GDMA was generally required to obtain at least two competitive quotes for the service and provide those quotes to the U.S. Navy. GDMA was allowed to submit its own quote as one of the competitive market quotes, but in its quote, GDMA was required to disclose any profit or markup. GDMA would also submit an Authorized Government Representative Form ("AGR Form") in which GDMA would recommend a particular source. After receiving the quotes and the AGR Form, the U.S. Navy would select which vendor to use for each Incidental.

//

      c. *Fuel.* Fuel was a subtype of Incidentals. Under the Region 2 contract, if GDMA arranged for the acquisition of fuel, it was required to bill the U.S. Navy for the fuel's actual costs, without markup; GDMA received a separate fixed fee for its efforts in arranging for the acquisition of the fuel.

      d. *Port Tariff Items.* Under the Region 2 contract, "Port Tariff Items" were ship husbanding services provided by a bona fide Port Authority and charged at "Port Tariff Rates" established and controlled by the Port Authority. For any of these services rendered to U.S. Navy vessels in port, GDMA was required to bill the U.S. Navy for the actual costs paid to the Port Authority, without markup.

9. In connection with the Region 2 contract, at the conclusion of each port visit, GDMA submitted to U.S. Navy personnel on the ship a claim for payment -- typically consisting of a series of invoices and supporting documentation -- for all the ship husbanding services rendered to the U.S. Navy vessel during the port visit.

### Count 1 - Conspiracy To Defraud the United States with Respect to Claims (18 U.S.C. § 286)

[Against All Defendants]

THE CONSPIRACY

10. Beginning in or about September 2011, and continuing to in or about September 2013, on the high seas and outside the jurisdiction of any particular district, defendants, NEIL PETERSON ("PETERSON"), LINDA RAJA ("RAJA"), ▉▉▉▉▉ ▉▉▉▉▉ ▉▉ ▉▉▉ ▉▉▉▉▉ and others knowingly and intentionally conspired and agreed to defraud the United States by obtaining and aiding to obtain the payment of false, fictitious, and fraudulent claims.

//

## METHODS AND MEANS OF THE CONSPIRACY

11. In furtherance of this conspiracy, and to accomplish its objects, the following methods and means were used, among others:

   a. PETERSON, RAJA, ■ and others would submit and cause to be submitted to the U.S. Navy fraudulent quotes for Incidentals, purporting to be from prospective subcontractors.

   b. PETERSON, RAJA, ■ and others would submit and cause to be submitted to the U.S. Navy fraudulent representations related to the acquisition of fuel, purporting to be from prospective subcontractors, including fraudulent representations about the unavailability in certain countries of the type of fuel required by U.S. Navy vessels, as well as fraudulent representations about the source and actual cost of the fuel provided by GDMA to the U.S. Navy vessels.

   c. PETERSON, RAJA, ■ and others would submit and cause to be submitted to the U.S. Navy fraudulent invoices for Port Tariff Items, purporting to be from bona fide Port Authorities.

   d. PETERSON, RAJA, ■ and others would submit and cause to be submitted to the U.S. Navy false, fictitious, and fraudulent claims for the purpose of obtaining and aiding to obtain the payment for the ship husbanding services rendered to U.S. Navy vessels during port visits, which claims included, depending on the port visited and U.S. Navy vessel, fraudulent representations related to Incidentals, Fuel, and Port Tariff Items.

All in violation of Title 18, United States Code, Section 286.

//
//
//

**Count 2 - Conspiracy To Commit Wire Fraud (18 U.S.C. § 1349)**

[Against All Defendants]

12. Paragraphs 1 to 9 above are re-alleged and incorporated herein.

### THE CONSPIRACY

13. Beginning in or about September 2011, and continuing to in or about September 2013, on the high seas and outside any particular district, defendants NEIL PETERSON ("PETERSON"), LINDA RAJA ("RAJA"), ███████ ████████ ███ ███ ████ and others knowingly and intentionally conspired and agreed to commit the offense of wire fraud -- that is, to knowingly devise and intend to devise a material scheme and artifice to defraud and to obtain money and property from the U.S. Navy by means of materially false pretenses, representations, and promises, and for the purpose of executing this scheme and artifice to defraud, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, and sounds, in violation of Title 18, United States Code, Section 1343.

### METHODS AND MEANS OF THE CONSPIRACY

14. In furtherance of this conspiracy, and to accomplish its objects, the following methods and means were used, among others:

   a. PETERSON, RAJA, ███ and others would submit and cause to be submitted to the U.S. Navy fraudulent quotes for Incidentals, purporting to be from prospective subcontractors.

   b. PETERSON, RAJA, ███ and others would submit and cause to be submitted to the U.S. Navy fraudulent representations related to the acquisition of fuel, purporting to be from prospective subcontractors, including fraudulent representations about the

unavailability in certain countries of the type of fuel required by U.S. Navy vessels, as well as fraudulent representations about the source and actual cost of the fuel provided by GDMA to the U.S. Navy vessels.

     c.   PETERSON, RAJA, ███ and others would submit and cause to be submitted to the U.S. Navy fraudulent invoices for Port Tariff Items, purporting to be from bona fide Port Authorities.

     d.   PETERSON, RAJA, ███ and others would submit and cause to be submitted to the U.S. Navy fraudulent claims for the purpose of obtaining and aiding to obtain the payment for the ship husbanding services rendered to U.S. Navy vessels during port visits, which claims included, depending on the port visited and U.S. Navy vessel, materially false pretenses, representations, and promises related to Incidentals, Fuel, and Port Tariff Items.

15. In furtherance of their fraudulent conspiracy, the defendants would cause wire communications to be sent and received in interstate and foreign commerce, and reasonably foresaw the use of such interstate and foreign wire communications, including communications among GDMA and various individuals and entities within the U.S. Navy for the purposes of: (1) discussing and responding to logistics requests placed by U.S Navy vessels; (2) providing port cost estimates; (3) uploading quotes for Incidentals; (4) providing pricing for Port Tariff Items; and (5) obtaining payment for the ship husbanding services rendered by GDMA to U.S. Navy vessels.

All in violation of Title 18, United States Code, Section 1349.

//
//
//

**Counts 3-11 - False Claims (18 U.S.C. § 287)**

16. Paragraphs 1 through 9 above are re-alleged and incorporated herein.

17. On or about the dates listed below in Column "A," the defendants charged below in Column "B" made and presented and caused to be made and presented to U.S. Navy personnel the claim for payment listed below in Column "C," knowing such claim to be false, fictitious, and fraudulent:

| Count | "A" - Date Claim Presented | U.S. Navy Vessel | Port | "B" - Defendant(s) | "C" Claim - Consisting of GDMA Invoices and Supporting Documentation | Total Amount of the Claim |
|---|---|---|---|---|---|---|
| 3 | 10/06/2011 | USS Defender | Lumut, Malaysia | Peterson, Raja | MS000147, MS000148, MS000149, MS000150, MS000151, MS000152, MS000153, MS000154, MS000154(A), MS000155 | $108,776.43 |
| 4 | 10/24/2011 | USS Denver | Subic Bay, Philippines | Peterson, Raja | PH001115, PH001116, PH001117A, PH001118, | $109,235.03 |
| 5 | 11/02/2011 | USS Mustin | Laem Chabang, Thailand | Raja, ■ | TH001116, TH001117, TH001118, TH001119, TH001120, TH001121, TH001122, TH001123, TH001126, TH001130, TH001131, | $2,834,554.49 |
| 6 | 11/14/2011 | USS Dewey | Phuket, Thailand | Raja, ■ | TH001142, TH001143, TH001144, TH001145, TH001146, TH001147, TH001149 | $181,783.98 |
| 7 | 11/14/2011 | USS Pinckney | Phuket, Thailand | Raja, ■ | TH001132, TH001133, TH001134, TH001135, TH001136, TH001137, TH001138 | $234,069.91 |
| 8 | 11/23/2011 | USS Essex | Bali, Indonesia | Peterson | IN0000403, IN0000404, IN0000405 | $897,355.68 |
| 9 | ■ | ■ | ■ | ■ | ■ | ■ |
| 10 | ■ | ■ | ■ | ■ | ■ | ■ |
| 11 | 10/26/2012 | USS Bonhomme Richard | Kota Kinabalu, Malaysia | Peterson | MS000340, MS000341, MS000342, MS000343 | $1,232,858.07 |

All in violation of Title 18, United States Code, Sections 287 and 2.

## FORFEITURE ALLEGATIONS

18. The allegations set forth in Paragraphs 1 through 9 and 12 through 15 of this Indictment are herein incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(c), and Title 28, United States Code, Section 2461(c).

19. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the above-named defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 981(a)(1)(c), and Title 28, United States Code, Section 2461(c), including but not limited to all property, real or personal, which constitutes or is derived from proceeds traceable to a conspiracy to commit wire fraud as alleged in this Indictment.

All pursuant to Title 18, United States Code, Section 981(a)(1)(c), and Title 28, United States Code, Section 2461(c).

DATED: December 23, 2014.

A TRUE BILL:

_____
Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
MARK W. PLETCHER
ROBERT S. HUIE
Assistant U.S. Attorneys

WILLIAM STELMACH
Acting Chief, Fraud Section
Criminal Division

By: _____
CATHERINE VOTAW MWP
BRIAN R. YOUNG
Trial Attorneys
Fraud Section, Criminal Division

I hereby attest and certify on 12/23/14
That the foregoing document is a full, true and correct copy of the original on file in my office and in my legal custody.

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____ Deputy